IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-95

 No. 473A20

 Filed 27 August 2021

 IN THE MATTER OF: D.M. & A.H.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1)–(2), (a2) from orders entered on

 26 August 2019 and 5 August 2020 by Judge Amber Davis in District Court, Dare

 County. This matter was calendared for argument in the Supreme Court on 21 June

 2021 but determined on the record and briefs without oral argument pursuant to Rule

 30(f) of the North Carolina Rules of Appellate Procedure.

 No brief for petitioner-appellee Dare County Department of Health & Human
 Services, Division of Social Services.

 No brief for appellee Guardian ad Litem.

 Garron T. Michael for respondent-appellant father.

 EARLS, Justice.

¶1 Respondent-father appeals from the trial court’s order terminating his

 parental rights in the minor children “David” and “Allison.”1 See N.C.G.S. § 7B-

 1001(a1)(1) (2019). Pursuant to N.C.G.S. § 7B-1001(a1)(2) and (a2), respondent-

 father also appeals from the permanency-planning order that eliminated

 reunification with respondent-father from the children’s permanent plan. The

 1 We use these pseudonyms to protect the juveniles’ identities and for ease of reading.
 IN RE D.M. & A.H.

 2021-NCSC-95

 Opinion of the Court

 children’s mother has relinquished her parental rights and is not a party to this

 appeal. We affirm.

¶2 On 1 May 2018, the Dare County Department of Health and Human Services,

 Division of Social Services (DSS), obtained nonsecure custody of six-year-old David

 and five-year-old Allison and filed juvenile petitions alleging they were neglected

 juveniles. After a hearing, the trial court entered an order on 9 August 2018

 adjudicating the children as neglected juveniles based on respondents’ stipulation to

 the following facts:

 9. On April 30, 2018, [the children’s mother] left
 the juveniles at her home with two persons who are not
 appropriate caregivers. [Her] neighbors called the police
 because the juveniles were yelling out of the upstairs
 windows that they were hungry and afraid to go
 downstairs.

 10. Police performed a welfare check at [the
 children’s mother’s] home on April 30, 2018 after receiving
 calls from her neighbors. . . . Once the juveniles were
 secured, police searched [the] home. They found two small
 bags with a white powdery substance they believed to be
 cocaine in the juveniles’ clothes and toy boxes. They found
 drug paraphernalia, including two burned pipes and two
 burned spoons. They also found about six grams of a
 powdery substance they believed to be cocaine in the
 freezer.

 11. [The children’s mother] failed to properly feed
 the juveniles. The home she provided for the juveniles was
 filthy, unkempt, and unsafe. There was moldy food in the
 kitchen, garbage throughout the home, and no suitable
 beds for the juveniles to sleep on.
 IN RE D.M. & A.H.

 2021-NCSC-95

 Opinion of the Court

 12. When [the children’s mother] arrived home,
 she told police that she had been on a date and had paid
 one of the individuals in the home $20.00 to watch the kids.
 She told police she had been gone for two hours and did not
 know who had been in her home. [She] was arrested and
 charged with possession of cocaine and possession of drug
 paraphernalia.

 13. [Respondent-father] had limited contact with
 the juveniles before the Juvenile Petition was filed. He has
 willingly left the juveniles in the care of [the children’s
 mother].

 14. Neither [the children’s mother] nor
 [respondent-father] have provided a safe, appropriate
 home for the juveniles.

 15. [The children’s mother] and [respondent-
 father] have failed to provide proper care and supervision
 for the juveniles. They have exposed the juveniles to
 unsafe, injurious environments.

 16. The juveniles require more adequate care and
 supervision than [the children’s mother] or [respondent-
 father] can provide in their homes.

¶3 In a disposition order entered on 6 November 2018, the trial court maintained

 the children in DSS custody and awarded respondent-father one hour per week of

 supervised visitation. The court found respondent-father had visited the children on

 two occasions since their placement in nonsecure custody but was arrested on 20 June

 2018 and was facing “serious” felony drug and weapons charges in Pitt County, which

 could result in “a substantial prison sentence.” The court ordered respondent-father

 to enter into a visitation plan with DSS “to establish a regular, consistent visitation

 schedule”; submit to random drug screens as requested by DSS and abstain from all
 IN RE D.M. & A.H.

 2021-NCSC-95

 Opinion of the Court

 intoxicating substances; obtain a substance abuse assessment and comply with all

 treatment recommendations; and keep DSS apprised of his whereabouts and address.

¶4 At the initial permanency-planning hearing held on 6 February 2019, the trial

 court established a primary permanent plan for the children of reunification with the

 children’s mother or respondent-father with a secondary plan of guardianship with a

 relative. The court maintained these primary and secondary plans at the next

 permanency-planning hearing held on 8 May 2019 and up to the permanency-

 planning hearing held on 7 August 2019.

¶5 However, in its permanency-planning order entered on 26 August 2019, the

 trial court changed the primary permanent plan to adoption, established a secondary

 plan of reunification with the children’s mother, and relieved DSS of further

 reunification efforts with respondent-father. The court found that respondent-father

 had yet to enter into a case plan or visitation plan with DSS; he had submitted to a

 drug screen after a court appearance on 6 February 2019 and tested positive for

 marijuana and cocaine; he had scheduled an appointment for substance abuse

 treatment at PORT New Horizons but failed to attend the appointment; and he had

 been incarcerated since May 2019 for assaulting “his young paramour.” The court

 also noted that respondent-father’s felony drug and weapons charges in Pitt County

 remained pending. Respondent-father filed a timely notice to preserve his right to

 appeal the order eliminating reunification with him from the children’s permanent
 IN RE D.M. & A.H.

 2021-NCSC-95

 Opinion of the Court

 plan. See N.C.G.S. § 7B-1001(a1)(2)(a), (b) (2019).

¶6 DSS filed a motion to terminate respondent-father’s parental rights on 11

 December 2019. The trial court held a hearing on the motion on 3 June and 1 July

 2020 and entered its “Termination of Parental Rights Order” on 5 August 2020. In its

 order, the court adjudicated the existence of grounds to terminate respondent-father’s

 parental rights for neglect, lack of reasonable progress, and dependency. See N.C.G.S.

 § 7B-1111(a)(1)–(2), (6) (2019). The trial court further concluded that termination of

 respondent-father’s parental rights was in both children’s best interests. See N.C.G.S.

 § 7B-1110(a) (2019). Respondent-father filed timely notices of appeal from the

 termination order and from the order eliminating reunification with him from the

 permanent plan. See N.C.G.S. § 7B-1001(a1)(1)–(2), (b).

¶7 Counsel for respondent-father has filed a no-merit brief on his client’s behalf

 under Rule 3.1(e) of the North Carolina Rules of Appellate Procedure. Counsel

 advised respondent-father of his right to file pro se written arguments on his own

 behalf and provided him with the documents necessary to do so. See N.C. R. App. P.

 3.1(e). Respondent-father has not submitted written arguments to this Court.

¶8 This Court independently reviews issues identified by counsel in a no-merit

 brief filed pursuant to Appellate Rule 3.1(e). In re L.E.M., 372 N.C. 396, 402 (2019).

 Respondent-father’s counsel has identified issues that could arguably support an

 appeal in this case while also explaining why, based on a careful review of the record,
 IN RE D.M. & A.H.

 2021-NCSC-95

 Opinion of the Court

 these issues lack merit.

¶9 With regard to the order eliminating reunification from the permanent plan,

 counsel for respondent-father acknowledges that competent evidence supports the

 trial court’s findings of fact and that the findings support the court’s conclusion that

 further efforts to reunify David and Allison with respondent-father “would clearly be

 unsuccessful or inconsistent with the juveniles’ need for a permanent pla[cement]

 within a reasonable period of time.” See N.C.G.S. § 7B-906.2(b) (2019). At the time of

 the permanency-planning hearing respondent-father had made no meaningful steps

 toward reunification; he was incarcerated for a recent act of domestic violence; he had

 submitted to just one drug screen, which was positive for marijuana and cocaine; and

 he had failed to attend a scheduled appointment to begin substance abuse treatment.

 The trial court’s ceasing of reunification efforts with respondent-father thus comports

 with the requirements of N.C.G.S. § 7B-906.2(b).

¶ 10 Turning to the termination order, counsel for respondent-father concedes that

 “the existence of a single ground for termination suffices to support the termination

 of a parent’s parental rights in a child,” In re J.S., 2021-NCSC-28, ¶ 24, and that the

 evidence and the trial court’s findings support a conclusion under N.C.G.S. § 7B-

 1111(a)(2) that respondent-father willfully left the children in a placement outside

 the home for more than twelve months without making reasonable progress to correct

 the conditions leading to their removal. Respondent-father’s failure to comply with
 IN RE D.M. & A.H.

 2021-NCSC-95

 Opinion of the Court

 the court’s orders or address his substance abuse issues, as well as his continued

 involvement in criminal conduct and resulting incarceration, evinced a lack of

 reasonable progress since the children were removed from the children’s mother’s

 custody in May 2018. See In re Z.K., 375 N.C. 370, 373 (2020). The trial court did not

 err in adjudicating the existence of grounds for termination pursuant to N.C.G.S.

 § 7B-1111(a)(2).

¶ 11 Finally, the trial court made written findings addressing each of the factors

 relevant to disposition under N.C.G.S. § 7B-1110(a). As counsel for respondent-father

 admits, the findings provide a rational basis for the trial court’s assessment that

 terminating respondent-father’s parental rights was in the children’s best interests

 in that it will facilitate the children’s adoption by their maternal aunt and uncle. We

 further note these findings are supported by competent evidence presented at the

 termination hearing. Accordingly, we conclude the trial court did not abuse its

 discretion during the dispositional stage of the proceeding by choosing to terminate

 respondent-father’s parental rights. In re Z.K., 375 N.C. at 373, 847 S.E.2d at 749.

¶ 12 Having considered the entire record and the issues identified in the no-merit

 brief, we affirm the trial court’s order eliminating reunification from the permanent

 plan and the trial court’s order terminating respondent-father’s parental rights.

 AFFIRMED.